# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| KOBE CARTER, #296132,<br><br>Petitioner,<br><br>v.<br><br>MICHAEL MCCALL, Warden,<br><br>Respondent. | CIVIL ACTION NO. 9:10-0074-JFA-BM<br><br>**REPORT AND RECOMMENDATION** |

Petitioner, an inmate with the South Carolina Department of Corrections ("SCDC"), seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The petition was filed on January 6, 2010.[1]

The Respondent filed a return and motion for summary judgment on May 3, 2010. As the Petitioner is proceeding pro se, a Roseboro order was filed on May 4, 2010, advising the Petitioner that he had thirty-four (34) days to file any material in opposition to the motion for summary judgment. Petitioner was specifically advised that if he failed to respond adequately, the motion for summary judgment may be granted, thereby ending his case. Petitioner thereafter filed a memorandum in opposition on May 27, 2010.

This matter is now before the Court for disposition.[2]

---

[1] Filing date per Houston v. Lack, 487 U.S. 266, 270-276 (1988).

[2] This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(c) and (e), D.S.C. The Respondent has filed a motion for summary judgment. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.



## Procedural History

Petitioner was indicted in June 2002 in Spartanburg County for Trafficking in Cocaine [Indictment No. 02-GS-42-2724] and Possession with Intent to Distribute Crack Cocaine [Indictment No. 2002-GS-42-2723]. See Indictments. Petitioner was represented by Patricia Anderson, Esquire, and after a jury trial on September 8, 2003, was found guilty as charged.[3] (R.pp. 1-449). On September 10, 2003, the trial judge sentenced Petitioner to a term of twenty-five (25) years for trafficking, and five (5) years, concurrent, for possession of crack cocaine first offense. (R.p. 457).

Petitioner filed a timely appeal, and Petitioner was represented on appeal by David M. Collins, Jr., Esquire. Petitioner raised the following issues on appeal:

1. Did the trial judge err by denying Appellant's Motion to Suppress on the grounds that the narcotics and money were seized as the result of the illegal search that occurred when the officer exceeded the scope of the safety checkpoint stop by opening the passenger side door and searching the interior of the automobile?

2. Did the trial judge err by denying Appellant's Motion to Suppress on the grounds that the narcotics and money were seized as the result of an illegal seizure and search that occurred when the officer illegally detained the Appellant after the completion of the safety checkpoint stop and performed a warrantless search of the automobile?

See Brief, p. 2.

On April 27, 2005, the South Carolina Court of Appeals affirmed Petitioner's conviction; see State v. Kobe Carter, 05-UP-299 (S.C.Ct.App. Apr. 27, 2005); and on June 22, 2005, the South Carolina Court of Appeals denied Petitioner's motion for rehearing. The Remittitur was issued on July 27, 2005.

On January 24, 2006, Petitioner filed a pro se application for post-conviction relief ("APCR") in state circuit court. Carter v. State of South Carolina, No. 2006-CP-42-250. Petitioner

---

[3] Petitioner was tried with co-defendant Gregory McHam. (R.pp. 1-450).

raised the following issue in his APCR:

Ineffective Assistance of Counsel in failing to preserve issues for review.

See Petition, p. 3.[4]

Petitioner was represented in his APCR by Richard W. Vieth, Esquire, and an evidentiary hearing was held on Petitioner's application on January 17, 2007. See Hearing Transcript. The PCR judge thereafter issued an order filed December 12, 2007, denying relief and dismissing the petition in its entirety. See PCR Order, dated December 10, 2007.

Petitioner filed a timely Writ of Certiorari in which he was represented by J. Falkner Wilkes, Esquire. Petitioner's counsel filed raised the following issues:

> I. The PCR court erred in finding that failure to timely object was not prejudicial error under Strickland v. Washington.
>
> II. Petitioner's issue as to suppression to which he presented but was denied appellate review due to trial counsel's failure to preserve issue by contemporaneous objection [two subparts].

See Brief, pp. 3, 5.

The South Carolina Court of Appeals issued an order on November 23, 2009, denying the petition for a writ of certiorari. See Carter v. State, Order (S.C.Sup.Ct. filed Nov. 23, 2009). The remittitur was issued on December 9, 2009.

In his Petition for writ of habeas corpus filed in this United States District Court, Petitioner raises the following grounds:

**Ground One:** Ineffective Assistance of [Trial] Counsel.

---

[4]The PCR application references an attachment, but the Respondent asserts that none is evident in the copy provided by the Clerk of Court's office to PCR counsel for the State. In any event, Petitioner only challenges one ineffective assistance of counsel claim in this action (in addition to a freestanding claim on the same basis of error). That ineffective assistance of counsel claim was dealt with in the Petitioner's PCR hearing, the PCR judge's order, the PCR appeal, and is addressed on the merits herein. See discussion, infra.



**Supporting Facts**: Trial counsel failed to make a contemporaneous objection when evidence was introduced, and thus caused Petitioner to not receive appellant review on appeal, because they the (appellant court) ruled so, and declined to hear the matter.

**Ground Two:** Did trial judge make error in allowing evidence to go before a jury, in violation of Petitioner's 4th amendment right.

See Petition, pp. 6-7.

## Discussion

Respondent has moved for summary judgment pursuant to Rule 56, Fed.R.Civ.P., submitting that the entire petition is without merit. Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(C), Fed.R.Civ.P; see Habeas Corpus Rules 5-7, 11. Further, while the federal court is charged with liberally construing pleadings filed by a pro se litigant to allow the development of a potentially meritorious case; See Cruz v. Beto, 405 U.S. 319 (1972), and Haines v. Kerner, 404 U.S. 519 (1972); the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990).

### I.

In Ground One of his Petition, Petitioner contends that his counsel was ineffective because she failed to make a contemporaneous objection to evidence being introduced that Petitioner contends was seized during an illegal search. This issue was raised in Petitioner's APCR, where Petitioner had the burden of proving the allegations in his petition. Butler v. State, 334 S.E.2d 813, 814 (S.C. 1985), cert. denied, 474 U.S. 1094 (1986). The PCR court rejected this claim, making relevant findings of fact and conclusions of law in accordance with S.C.Code Ann. § 17-27-80 (1976),



4

as amended. See Carter v. State of South Carolina, No. 06-CP-42-250.

Specifically, the PCR judge found that: 1) Petitioner testified his counsel should have objected to the submission of the drugs found; 2) counsel did make a motion in limine, which was denied, but did not object when the drugs were submitted into evidence; 3) trial counsel's testimony was credible while Petitioner's testimony was not credible; 4) Petitioner failed to prove he was prejudiced by counsel's failure to contemporaneously object to the admission of evidence; 5) Petitioner failed to prove that this argument would have been successful on appeal; 6) the trial judge properly exercised his discretion in determining that the drugs were admissible; 7) Officer Crawford (the arresting officer) testified at trial that the defendants were written traffic violations at a safety checkpoint; 8) Crawford testified that both occupants of the car were looking all over the car and making movements inconsistent with searching for the car's registration; 9) Crawford could not see the passenger very well so he moved around the car to make sure he was not accessing weapons; 10) the officer testified that he could not see the passenger's hands, so he opened the door for his own safety; 11) there he saw a baggie of crack cocaine on the running board of the car in plain view; 12) the initial stop was at a safety checkpoint and was lawful; 13) the only reason the stop was prolonged was because the driver could not produce his registration; 14) the suspicious movements of the occupants gave the officer reasonable initial concern for his safety; 15) the officer was within his power to open the car door to better observe the occupants to protect himself; 16) the discovery of drugs was inadvertent and their incriminating nature was immediately apparent to the officer; 17) any drugs found after this discovery would have also been admissible; 18) the court denies and dismisses this allegation; 19) as to any and all allegations that were or could have been raised in the application or at the hearing in this matter, but were not specifically addressed in this order, the Court found that the Petitioner failed to present any probative evidence regarding such allegations; 20) Petitioner

5



waived such allegations and failed to meet his burden of proof regarding them; 21) accordingly, they are denied and dismissed with prejudice; and 22) Petitioner failed to carry his burden to show that trial counsel's representation fell below the standard of professional reasonableness for a criminal defense attorney in this regard. See PCR Order.

Substantial deference is to be given to the state court's findings of fact. Evans v. Smith, 220 F.3d 306, 311-312 (4th Cir. 2000), cert. denied, 532 U.S. 925 (2001) ["We . . . accord state court factual findings a presumption of correctness that can be rebutted only by clear and convincing evidence], cert. denied, 532 U.S. 925 (2001); Bell v. Jarvis, 236 F.3d 149 (4th Cir. 2000)(en banc), cert. denied, 112 S.Ct. 74 (2001).

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1). See also Fisher v. Lee, 215 F.3d 438, 446 (4th Cir. 2000), cert. denied, 531 U.S. 1095 (2001); Frye v. Lee, 235 F.3d 897, 900 (4th Cir. 2000), cert. denied, 533 U.S. 960 (2001).

However, although the state court findings as to historical facts are presumed correct under 28 U.S.C. § 2254(e)(1), where the ultimate issue is a mixed question of law and fact, as is the issue of ineffective assistance of counsel, a federal court must reach an independent conclusion. Strickland v. Washington, 466 U.S. 668, 698 (1984); Pruett v. Thompson, 996 F.2d. 1560, 1568 (4th Cir. 1993), cert. denied, 114 S.Ct. 487 (1993) (citing Clozza v. Murray, 913 F.2d. 1092, 1100 (4th Cir. 1990), cert. denied, 499 U.S. 913 (1991)). Nevertheless, since Petitioner's ineffective assistance of counsel claims were adjudicated on the merits by the South Carolina state court, this Court's review is limited by the deferential standard of review set forth in 28 U.S.C. §2254(d), as interpreted by the Supreme Court in Williams v. Taylor, 529 U.S. 362 (2000). See Bell v. Jarvis, supra; see also Evans, 220 F.3d at 312 [Under § 2254(d)(1) and (2), federal habeas relief will be granted with respect to a



claim adjudicated on the merits in state court proceedings only where such adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States", or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding"]. Therefore, this Court must be mindful of this deferential standard of review in considering Petitioner's ineffective assistance of counsel claim.

Where allegations of ineffective assistance of counsel are made, the question becomes "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland, 466 U.S. at 694. In Strickland, the Supreme Court articulated a two prong test to use in determining whether counsel was constitutionally ineffective. First, the Petitioner must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel's performance was below the objective standard of reasonableness guaranteed by the Sixth Amendment. Second, the Petitioner must show that counsel's deficient performance prejudiced the defense such that the Petitioner was deprived of a fair trial. In order to show prejudice a Defendant must show that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. Mazzell, 88 F.3d at 269.

Petitioner has failed to meet his burden of showing that his counsel was ineffective under this standard. Smith v. North Carolina, 528 F.2d 807, 809 (4th Cir. 1975) [Petitioner bears the burden of proving his allegations when seeking a writ of habeas corpus]. Although counsel did fail to make a contemporaneous objection at trial, Petitioner has failed to show that such an objection would have affected the outcome of his case. The record shows that Petitioner's counsel had previously made a motion to suppress and that a pretrial hearing was held on this matter, during which

7



a cross-examination of the arresting officer was conducted. (R.pp. 9-88). However, despite Petitioner's counsel's efforts, the motion to suppress was denied. (R.pp. 86-88).

At the motion hearing, officer James Crawford testified that he was working a traffic safety checkpoint on the evening at issue. (R.p. 15). When the vehicle in which Petitioner was a passenger approached the checkpoint, Crawford testified that he observed that the Petitioner and the driver were not wearing their seatbelts. (R.p. 17). Crawford asked the driver for his driver's license, the car registration, and the insurance card, following which the driver produced his driver's license, but could not find the registration or the insurance card. (R.pp. 17-18). Crawford testified that the driver and the Petitioner

> started looking, looking around the vehicle, I mean, all over the vehicle in places that I wouldn't normally, you know, expect someone to keep a registration card – underneath the seats and between the seats, over. And they were making a lot of furtive movements that, that I didn't feel was consistent with looking for the, the paperwork to the vehicle, and they, they couldn't find it. I gave them ample time to find it, and they, they were still looking around.
>
> And at that point I was the only one in the roadway. And I couldn't see the, the passenger's movements very well. So I repositioned myself over to the, to the passenger side of the vehicle.
>
> . . . But one of my concerns was I couldn't what see the passenger was doing. They were making a lot of movements in the car that I didn't feel was consistent looking, looking for a registration card or a proof of insurance. Plus, I wanted to make sure they weren't accessing a weapon or anything like that.
>
> So for my safety I went around to the other side of the car so I could get a better view of the occupants in the car.
>
> . . . I couldn't see [the Petitioner's] hands. I couldn't see the [Petitioner's or co-defendant's] hands. It was dark. Like I said, there was no artificial lighting out there. I was by myself. I was aware of where we were at and, like I said, I didn't have any assistance. So, I mean, for my safety I opened up the door to watch what they were doing while they were going through the car.
>
> . . . As soon as I opened the door there was a, there was a baggy of crack that was situated between the seat, basically on a little, I guess you could call it, a running board type of thing, the area between the seat, on the, on the car between the seat and

8



the passenger's door.

(R.pp. 18-20).

Crawford then testified as to the subsequent events which included calling for assistance, confiscating the crack, taking the keys from the ignition, and telling the Petitioner that he was under arrest. (R.pp. 20-21). Crawford testified that Petitioner then lunged underneath the seat and the officer thought that the Petitioner was going for a weapon, at which time Crawford and the officer then assisting him, pulled their weapons and took Petitioner from the car. (R.p. 21). The search of the car incident to the arrest produced a grocery bag full of cocaine under Petitioner's seat, and Petitioner had two bags of marijuana and a rolled up blunt marijuana cigar on his person. (R.pp. 21-22). The officers also recovered a set of digital scales in close proximity to where the officers took the Petitioner to the ground. (R.pp. 21-22).[5]

At the conclusion of the suppression hearing, the trial judge found that; 1) the initial purpose of the traffic stop was for a legitimate purpose; 2) the law enforcement officers acted reasonably upon stopping the vehicle; 3) the officer testified that the purpose of opening the vehicle was simply to ensure that he could view the interior of the car and could view the defendants; 4) because the officer could not see, he obviously had a right to protect himself and to ensure that he was safe during the course of the meeting with the defendants; 5) because the officer could not see the Petitioner's hands to see what he was doing without opening the passenger door, it was not intended to be a search, but was intended to be an officer protection procedure; 6) traffic stops, even thought to be routine, are inherently dangerous, and especially in the dark; 7) during such a stop the officers would have an opportunity and would have the right to have the defendants removed from the vehicle

---

[5] Later testing determined the substances and weights as follows: 12.67 grams of marijuana; 124.92 grams of powder cocaine; and, 4.83 grams of crack cocaine. (R.pp. 290-291).

9



in order to ensure their own safety; 8) the fact that the officer opened the door so that he could see better was not an unreasonable search, and therefore any seizure was not violative of any constitutional provision; and 9) the motion to suppress was denied. (R.pp. 87-89).

Based on this record and evidence, Petitioner has failed to show that his counsel was ineffective. Petitioner has also failed to show that, even if his counsel had made an contemporaneous objection to the admission of the evidence at trial, the outcome of his case would have been different. As was noted in United States v. Holt, 264 F.3d 1215 (10th Cir. 2001);

> The terrifying truth is that officers face a very real risk of being assaulted with a dangerous weapon each time they stop a vehicle. The officer typically has to leave his vehicle, thereby exposing himself to potential assault by the motorist. The officer approaches the vehicle not knowing who the motorist is or what the motorist's intentions might be. It is precisely during such an exposed stop that the courts have been willing to give the officers "wide latitude," [United States v.] Stanfield, 109 F.3d [976], 978 [(4th Cir. 1997)], to discern the threat the motorist may pose to officer safety.
>
> An officer in today's reality has an objective, reasonable basis to fear for his or her life every time a motorist is stopped. Every traffic stop, after all, is a confrontation. The motorist must suspend his or her plans and anticipates receiving a fine and perhaps even a jail term. That expectation becomes even more real when the motorist or a passenger knows there are outstanding arrest warrants or current criminal activity that may be discovered during the course of the stop. Resort to a loaded weapon is an increasingly plausible option for many such motorists to escape those consequences, and the officer, when stopping a car on a routine traffic stop, never knows in advance which motorists have that option by virtue of possession of a loaded weapon in the car.

Holt, 264 F.3d at 1223.

Courts have balanced the interests at issue in such situations and "allowed considerations of officer safety to outweigh [even] fairly intrusive conduct during a traffic stop," including using a flashlight to check the dark interior of a car and opening the door of a vehicle to check for weapons. Id. Based on the specific facts in this case including the Petitioner's conduct as shown in the record and the officer's concern for his safety, Petitioner has not shown how an



10

objection by his counsel at trial to the admission of this evidence would have changed the outcome of his trial. Id.; cf. United States v. Clay, No. 06-56, 2007 WL 37949 at **6-7 (D.Nev. Jan. 3, 2007)[Finding based on the facts of the case, that "[o]pening the passenger door was an objectively reasonable measure to determine whether passenger had a weapon and a *de minimis* intrusion."]; Stanfield, 109 F.3d at 981 [opening door of a vehicle with darkly tinted windows to check for weapons]; Pennsylvania v. Mimms, 434 U.S. 106, 111 (1991)["Against this important interest we are asked to weigh the intrusion into the driver's personal liberty occasioned not by the initial stop of the vehicle, which was admittedly justified, but by the order to get out of the car. We think this additional intrusion can only be described as *de minimis*]; see generally United States v. King, No. 07-104, 2008 WL 4099112 (N.D.Ind. Sept. 2, 2008).

Accordingly, Petitioner has not shown ineffective assistance or any prejudice based on counsel's conduct, and he has therefore failed to present evidence sufficient to show that the state court's rejection of this claim was unreasonable. Evans, 220 F.3d at 312 [Federal habeas relief will not be granted on a claim adjudicated on the merits by the state court unless it resulted in a decision that was based on an unreasonable determination of the law or facts in light of the evidence presented in the state court proceeding]; Williams v. Taylor, supra. Bell, 236 F.3d at 157-158; 28 U.S.C. § 2254(e)(1) [Determination of a factual issue by the state court shall be presumed correct unless rebutted by clear and convincing evidence]. This claim should be dismissed.

## II.

In Ground Two of his Petition, Petitioner contends that the trial court erred because it denied his motion to suppress the drug and money evidence seized during the course of the traffic stop. This issue was raised by Petitioner in his direct appeal, and was denied by the South Carolina Court of Appeals on the grounds that it was not properly preserved for review at trial. State v. Carter,



05-UP-299 (S.C.Ct.App. Apr. 27, 2005). See State v. Johnson, 510 S.E.2d 423, 424 (S.C. 1999)[issue not preserved at trial cannot be raised for the first time on direct appeal]. Since Petitioner did not preserve this claim at his trial, it is barred from consideration by this Court absent cause and prejudice or a miscarriage of justice. Dorsey v. Edmonds, No. 09-199, 2010 WL 753295, * 3 (W.D.Va. March 3, 2010).

> In all cases in which a State prisoner has defaulted his Federal claims in State court pursuant to an independent and adequate State procedural rule, Federal Habeas review of the claim is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of Federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

Coleman v. Thompson, 501 U.S. 722, 750 (1991).

In his memorandum in opposition, Petitioner asserts as cause for his procedural default that his trial counsel was ineffective for failing to properly object and preserve this issue for appellate review. The United States Supreme Court has held that "if the procedural default is the result of ineffective assistance of counsel, the Sixth Amendment itself requires that responsibility for the default be imputed to the State . . . Ineffective assistance of counsel, then, is cause for procedural default." Murray v. Carrier, 477 U.S. 478, 488 (1986); see also Coleman v. Thompson, supra; McCleskey v. Zant, 499 U.S. 467, 494 (1991); Noble v. Barnett, 24 F.3d 582, 586, n.4 (4th Cir. 1994)("[C]onstitutionally ineffective assistance of counsel is cause per se in the procedural default context"); Smith v. Dixon, 14 F.3d 956, 973 (4th Cir. 1994)(en banc). However, while ineffective assistance of counsel can constitute "cause" for a procedural default, the undersigned has already specifically considered and found in Ground One that Petitioner failed to establish ineffective assistance of counsel on this claim. See discussion, supra. Accordingly, Petitioner has failed to show cause for his procedural default on this claim. Rodriguez v. Young, 906 F.2d 1153, 1159 (7th Cir.



12

1990), cert. denied, 498 U.S. 1035 (1991) ["Neither cause without prejudice nor prejudice without cause gets a defaulted claim into Federal Court."].

Nor does the undersigned find that Petitioner has met his burden of showing actual innocence, or that a fundamental miscarriage of justice will occur if this claim is not considered. See Wainwright v. Sykes, 433 U.S. 72 (1977); Murray v. Carrier, 477 U.S. 478, 488 (1986); Rodriguez, 906 F.2d at 1159 [a fundamental miscarriage of justice occurs only in extraordinary cases, "where a constitutional violation has probably resulted in the conviction of one who is actually innocent"](citing Murray v. Carrier, 477 U.S. at 496)); Sawyer v. Whitley, 505 U.S. 333, 348 (1992); Bolender v. Singletary, 898 F.Supp. 876, 881 (S.D.Fla. 1995)). To prevail under an "actual innocence" theory, Petitioner must produce new evidence that was not available at trial to show his factual innocence. Royal v. Taylor, 188 F.3d 239, 244 (4th Cir. 1999). Further, Petitioner must "demonstrate actual factual innocence of the offense or conviction; i.e., that petitioner did not commit the crime of which he was convicted." United States v. Mikalajunas, 186 F.3d 490, 494 (4th Cir. 1999). He has failed to do so. Therefore, this claim is procedurally barred from consideration by this Court, and must be dismissed. See 28 U.S.C. § 2254.

In any event, even if this claim could be considered, federal habeas relief is not available on a claim that the trial court admitted evidence obtained in violation of the Fourth Amendment where the Petitioner had a full and a fair opportunity to litigate the claim in state court. Stone v. Powell, 428 U.S. 465, 494-495 (1976)["we conclude that where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at trial"]; Boggs v. Blair, 892 F.2d 1193, 1199-1200 (4th Cir. 1989), cert. denied, 495 U.S. 940 (1990). Such is the case here. The record reflects that Petitioner's trial counsel



13

moved to suppress the drug and money evidence seized during the course of the traffic stop, which motion was denied following an extensive in camera hearing. (R.pp. 9-88). Petitioner had a full and fair opportunity to litigate, and in fact actually litigated, this claim before the trial court. Furthermore, Petitioner also raised this issue in his direct appeal, and while the appellate court found that this issue had not been preserved for appellate review, Petitioner was then able to pursue an ineffective assistance of counsel claim based on this issue, which afforded him yet another evidentiary hearing where he was represented by counsel. Although Petitioner disagrees with the factual findings and ruling of the trial court, the PCR court, and the South Carolina Court of Appeals (on Petitioner's PCR appeal), the record reflects that all three of these state courts considered and rejected this claim on the merits.

Petitioner has not shown that he did not have a full and fair opportunity to litigate this claim in state court. Accordingly, it is not necessary to address the merits of this claim. Stone v. Powell, supra; Boggs, 892 F.2d at 1199-1200; Doleman v. Muncy, 579 F.2d 1258, 1265 (4th Cir. 1978)["[The Court] need not inquire further into the merits of the case . . . unless the prisoner alleges something to indicate his opportunity for a full and fair litigation of his Fourth Amendment claim or claims was in some way impaired."]. This issue is therefore without merit and should be dismissed.

### Conclusion

Based on the foregoing, it is recommended that the Respondent's motion for summary judgment be **granted**, and that the Petition be **dismissed**, with prejudice.

The parties are referred to the Notice Page attached hereto.

September 24, 201  
Charleston, South Carolina

Bristow Marchant  
United States Magistrate Judge

14

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
P.O. Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).

